UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED ABUOJAYLAH ALI ANBEES, *et al.*, <br><br>           Plaintiffs, <br><br>     v. <br><br> KHALIFA HIFTER, *et al.*, <br><br>           Defendants. | Case No. 1:23-cv-02061-AHA <br> Judge Amir H. Ali |

**DEFENDANT SADDAM HIFTER'S SPECIAL APPEARANCE AND OPPOSITION TO PLAINTIFFS' REQUEST FOR CLERK'S ENTRY OF DEFAULT**

Timothy Parlatore
Parlatore Law Group, LLP
260 Madison Ave., 17th Floor
New York, New York 10016
timothy.parlatore@parlatorelawgroup.com

Jason A. Masimore *(Pro Hac Vice to be filed)*
Brodbecks Law, PLLC
305 Broadway, 7th Floor
New York, New York 10007
jason.masimore@brodbeckslaw.com

*Counsel for Defendant Saddam Hifter*
*(Special Appearance — Without Submission to*
*Jurisdiction)*

## Table of Contents

*INTRODUCTION* ................................................................................................................ *1*

*NOTICE OF SPECIAL APPEARANCE AND RESERVATION OF DEFENSES* ............... *1*

*FACTUAL BACKGROUND* ............................................................................................. *2*

  A. The Underlying Action**................................................................................** 2

  B. Two Hifter Sons Were in Washington on April 28-29, 2025 — At Different Events 2

  C. The Process Server Went to Belqasem's Event and Served the Wrong Person**........** 4

  D. The Photographs Confirm the Misidentification **....................................................** 5

  E. The Process Server's Subsequent Declaration Confirms the Error **........................** 6

*LEGAL STANDARD* ...................................................................................................... *7*

*ARGUMENT* ..................................................................................................................... *8*

  A. Default Should Not Be Entered Because Plaintiffs Never Served Saddam Hifter**....** 8

  B. In the Alternative, Good Cause Exists to Set Aside Any Entry of Default Under

    Rule 55(c) **..................................................................................................** 10

    *1. The Default Was Not Willful* ..................................................................... 10

    *2. Setting Aside Default Would Not Prejudice Plaintiffs* ......................................... 10

    *3. Saddam Hifter Has Meritorious Defenses* ............................................. 11

  C. The Strong Policy Favoring Resolution on the Merits Requires Denial of Default **.** 12

CONCLUSION        12

## INTRODUCTION

Defendant Saddam Hifter, by and through undersigned counsel, makes a special appearance for the limited purpose of opposing Plaintiffs' Request for Clerk's Entry of Default (ECF No. 21) and respectfully requests that the Court deny the Request. The threshold reason is simple: Plaintiffs never served Saddam Hifter. They served his brother.

On April 28-29, 2025, two sons of co-Defendant Khalifa Hifter were in Washington, D.C. — at different events, in different roles. Saddam Hifter, a Colonel in the Libyan National Army, was at the U.S. State Department for military and diplomatic meetings with senior U.S. officials. His brother Belqasem Hifter, the Director of the Libyan Development and Reconstruction Fund, was the keynote speaker at the Libyan-American Forum for Development and Reconstruction, held at The Ritz-Carlton and co-hosted by the US-Libya Business Association. Plaintiffs' process server went to the Ritz-Carlton, asked a conference attendee to point out "Saddam Hifter," was directed to the man on stage signing papers, and served that person. The man on stage signing memoranda of understanding with American companies was Belqasem — not Saddam.

The photographs attached to the process server's own sworn declaration make this unmistakably clear. As shown below, the person depicted in those photographs bears no resemblance to Saddam Hifter.

## NOTICE OF SPECIAL APPEARANCE AND RESERVATION OF DEFENSES

Undersigned counsel enters this appearance on behalf of Saddam Hifter as a **special and limited appearance** for the sole purpose of opposing Plaintiffs' Request for Clerk's Entry of Default and preserving all available defenses. This appearance is made **without submitting to the jurisdiction of this Court** and **without waiving any defense** available under Federal Rule of Civil Procedure 12(b) or otherwise, including but not limited to:

- Lack of personal jurisdiction under Rule 12(b)(2);
- Insufficient service of process under Rule 12(b)(5);
- Failure to state a claim upon which relief can be granted under Rule 12(b)(6);
- Lack of standing; and
- Any other defense available at law or in equity.

Defendant expressly preserves all such defenses and does not waive any defense by making this special appearance. *See Shatsky v. Palestine Liberation Organization*, 955 F.3d 1016, 1038-39 (D.C. Cir. 2020) (defendant who expressly stated it was "not waiving any of the defenses raised in the verified answer" did not forfeit personal jurisdiction defense); *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (non-merits filings do not waive Rule 12(b) defenses); *Raynor v. District of Columbia*, 296 F. Supp. 3d 66, 71 (D.D.C. 2017) ("courts in this Circuit have roundly rejected the notion that these types of filings might serve to waive arguments for defective service of process").

## FACTUAL BACKGROUND

### A. The Underlying Action

Plaintiffs filed this action on July 18, 2023, asserting claims under the Torture Victim Protection Act of 1991 ("TVPA") arising from an incident in Libya on September 23-24, 2019. (ECF No. 1.) Saddam Hifter was not named as a defendant until the Second Amended Complaint, filed nearly two years later on April 29, 2025. (ECF No. 12.) The operative complaint seeks $20 million in damages and does not allege that Saddam Hifter was personally present at, or specifically ordered, the alleged incident. (ECF No. 12 ¶¶ 62-63.) The Complaint invokes personal jurisdiction solely under Federal Rule of Civil Procedure 4(k)(2) and alleges no conduct by Saddam Hifter directed at the United States. (*Id.* ¶ 17.)

### B. Two Hifter Sons Were in Washington on April 28-29, 2025 — At Different Events

Defendant respectfully requests that the Court take judicial notice under Federal Rule of Evidence 201 of the following publicly available facts, which are "not subject to reasonable

2

dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

**Saddam Hifter was at the U.S. State Department.** On April 28, 2025, Saddam Hifter, acting as envoy of his father Khalifa Hifter, met at the State Department with Massad Boulos (Senior Advisor to President Trump on Arab and Middle Eastern Affairs), Tim Lenderking (Senior Bureau Official, Bureau of Near Eastern Affairs), and Richard Norland (U.S. Special Envoy). These meetings concerned military, security, and political matters related to Libya. Saddam's role was diplomatic and military in nature, consistent with his position as a Colonel and commander of the LNA's ground forces.



U.S. State Dept - Near Eastern Affairs ✔ ◎
@StateDept_NEA

Senior Bureau Official Tim Lenderking, Senior Advisor Massad Boulos, and Special Envoy Richard Norland hosted at the State Department on April 28 a delegation led by Lt. General Saddam Haftar, the envoy of the General Commander of the Libyan National Army. They agreed that a secure, united, and prosperous Libya, with strong technocratic institutions including the National Oil Corporation and Central Bank of Libya, will be better able to do business with the United States and U.S. companies. The United States will continue to engage officials from western and eastern Libya and to support Libyan efforts to unify their military institutions as Libyans secure their sovereignty.

6:03 PM · Apr 28, 2025 · 74.2K Views

**Belqasem Hifter was at The Ritz-Carlton.** On April 28-29, 2025, the US-Libya Business Association ("USLBA") co-hosted the inaugural "Libyan-American Forum for Development and

---

[1] https://x.com/StateDept_NEA/status/1916976654238314616?s=20

3

Reconstruction" at The Ritz-Carlton, 1150 23rd Street, N.W., Washington, D.C. — the precise location where Plaintiffs claim service was effected. Belqasem Hifter — the Director of the Libyan Development and Reconstruction Fund ("LDRF") — was the **keynote speaker** and guest of honor. The forum featured the signing of multiple memoranda of understanding between the LDRF, the USLBA, and American companies.[2] The forum's own materials identify "Eng. Belkasem Khalifa Hifter" as the chairman of the event.[3]

Saddam and Belqasem Hifter are distinct individuals with different roles and different physical appearances. Recent reporting confirms that the two brothers have competing interests within the Hifter camp.

**C. The Process Server Went to Belqasem's Event and Served the Wrong Person**

The Return of Service (ECF No. 15) states that process server Maxwell Cook received documents "to be served upon Saddam Hifter at The Ritz-Carlton." Mr. Cook's supplemental narrative describes what happened: he spoke with "a conference attendee" and asked if the attendee could "point out" Saddam Hifter. The attendee identified "the man currently on stage signing papers." Mr. Cook waited for the man to finish on stage, then approached him, stated his name, and the man "extended his hand to accept the legal documents." (ECF No. 15.)

Every detail of this account is consistent with service on Belqasem, not Saddam. The event at The Ritz-Carlton on April 29, 2025 was the Libyan-American Forum for Development and Reconstruction — Belqasem's event. The man "on stage signing papers" was Belqasem, who was the keynote speaker signing memoranda of understanding with American companies. Saddam was not at the event, but rather was in town to meet with the State Department.

---

[2] https://washdiplomat.com/libyan-american-forum-to-spark-us-investment-in-critical-projects/
[3] https://usaly.forum/funds-chairman-message/

The conference attendee who directed Mr. Cook to "the man on stage" may not have known the difference between the two brothers, or may have assumed that the prominent Hifter at the event — Belqasem — was the person Mr. Cook was seeking. Mr. Cook had no independent means of verifying the identity of the person he served. He relied entirely on a stranger's identification at a crowded conference.

### D. The Photographs Confirm the Misidentification

The process server's own declaration attaches photographs of the person he served. (Ex. A, Cook Decl. ¶¶ 3-4.) Mr. Cook states: "Below are photographs of the man I served, which appear to depict him at the Ritz-Carlton event where I served him. I did not take these photos, but I recognize him." (*Id.* ¶ 3.) The Court is respectfully invited to compare the photograph of the person served with a publicly available photograph of Saddam Hifter:

**Saddam Hifter (left)[4] | Person Served (center)[5] | Belqasem Hiftar (Right)[6]**



---

[4] https://x.com/StateDept_NEA/status/1916976654238314616?s=20
[5] Cook Declaration
[6] https://usaly.forum/funds-chairman-message/

The photographs are not of the same person. The individual depicted in the Cook Declaration photographs does not resemble Saddam Hifter, it resembles Belqasem Hifter, who's photo is in the forum's own materials. This visual comparison — drawn from the process server's own sworn declaration and the State Department's April 28 photograph of defendant Saddam Hifter — confirms what the circumstantial evidence already establishes: the process server served Belqasem Hifter, not Saddam Hifter.

This Court may take judicial notice of publicly available photographs of public figures for the limited purpose of establishing their physical appearance. *See* Fed. R. Evid. 201(b)(2). Saddam Hifter is a public figure who appears regularly in Libyan media and international news coverage. The State Department's photograph cited above is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*

The D.C. Court of Appeals has specifically recognized that in cases of alleged misidentification in service of process, "the truth or falsity of representations regarding [a person's] physical appearance could readily be ascertained" by the Court, and that the Court "could view [the person] and make its own determination of whether this was the individual whom Plaintiff claims to have served." *Ouriaghli v. Moore*, 621 A.2d 392, 395 (D.C. 1993). The Court need not hold an evidentiary hearing to make that determination here — the photographs speak for themselves.

**E. The Process Server's Subsequent Declaration Confirms the Error**

After executing the Return of Service, Mr. Cook executed a separate sworn declaration under penalty of perjury on October 3, 2025. (Ex. A.) In that declaration, Mr. Cook states that he served documents "on a man I believed at the time to be Saddam Hifter." (Ex. A ¶ 3 (emphasis added).) This is a significant retreat from the Return of Service's unqualified statement that he "Personally Served Saddam Hifter." (ECF No. 15.)

6

In support of their Request for Entry of Default, Plaintiffs filed the Declaration of Omar Tabuni (ECF No. 21-1). Mr. Tabuni is "an investigator retained by counsel for Plaintiffs." (*Id.* ¶ 1.) He was not present at the purported service. His declaration merely recounts the contents of Mr. Cook's Return of Service and adds no independent firsthand knowledge of the events of April 29, 2025. (*Id.* ¶¶ 5-6.) Mr. Tabuni's declaration does not address, let alone rebut, Mr. Cook's subsequent sworn statement that he served someone he merely "believed" to be Saddam Hifter, nor does it address the photographs attached to Mr. Cook's declaration confirming for certain that he did not serve Saddam Hifter.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Entry of default requires two predicates: (1) the party must have been properly served, such that an obligation to respond has arisen; and (2) the party must have "failed to plead or otherwise defend" after that obligation arose.

Where service of process is defective, no obligation to respond arises, and entry of default is improper. As the D.C. Circuit has held, "service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party," and "it is uniformly held that a judgment is void where the requirements for effective service have not been satisfied." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987). A default judgment entered without effective service "'is void,' even though the defendant has actual notice of the action." *Miranda v. Contreras*, 754 A.2d 277, 281 (D.C. 2000) (quoting *McLaughlin v. Fidelity Sec. Lif Ins.*, 667 A.2d 105, 107 (D.C. 1995).

In the alternative, Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In this Circuit, courts evaluate good cause by considering three factors: "(1) whether the default was willful, (2) whether a set-aside would prejudice plaintiff, and (3) whether the alleged defense was meritorious." *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980). This standard is applied with a strong thumb on the scale in favor of the defaulting party, because "[d]efault judgments are not favored by modern courts, and the philosophy of modern federal procedure favors trials on the merits." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

## **ARGUMENT**

### A. Default Should Not Be Entered Because Plaintiffs Never Served Saddam Hifter

The Court should deny Plaintiffs' Request because the threshold requirement for entry of default — valid service of process — has not been met.

Rule 4(e)(2)(A) requires that an individual be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). This means the documents must be delivered to the actual named defendant. Service on a different individual, even one mistakenly believed to be the defendant, does not satisfy Rule 4. *See Ouriaghli*, 621 A.2d at 392 (reversing denial of motion to vacate default judgment where process server "actually served the wrong person").

The record before the Court establishes misidentification through multiple independent lines of evidence:

*First*, the event at The Ritz-Carlton on April 29, 2025 was Belqasem Hifter's forum — not a venue where Saddam Hifter was present, *i.e.*, the State Department the day before. The process server went to the wrong event.

*Second*, the process server did not independently identify Saddam Hifter. He relied entirely on a stranger's direction at a crowded conference. That stranger pointed him to the man on stage — who was Belqasem, the keynote speaker signing MOUs.

*Third*, the photographs attached to the process server's own declaration depict a person who does not resemble Saddam Hifter. The side-by-side comparison in Section D above is self-evident.

*Fourth*, the process server himself has acknowledged the uncertainty. In his sworn declaration, Mr. Cook states he served someone he "believed at the time to be Saddam Hifter" — a significant qualification absent from the Return of Service. (Ex. A ¶ 3.)

A signed return of service constitutes only "prima facie evidence of valid service" and "is by no means definitive evidence." *Raynor*, 296 F. Supp. 3d at 69-70. When the propriety of service is challenged, the burden falls on the plaintiff to prove proper service. *Id.* at 69. Here, Plaintiffs cannot carry that burden. Their own process server's subsequent sworn testimony, combined with the photographic evidence and the publicly documented events of April 28-29, 2025, affirmatively establishes that the wrong person was served.

Because Saddam Hifter was never served, his time to respond under Rule 12(a)(1)(A) never began to run. He has not "failed to plead or otherwise defend" within the meaning of Rule 55(a). The Request for Entry of Default should be denied.

At minimum, the factual dispute regarding service warrants an evidentiary hearing before any default is entered. *See Ouriaghli*, 621 A.2d at 395 (holding that "an evidentiary hearing must be held" when defendant alleges mistaken identity in service with specific factual support, particularly where "the truth or falsity of representations regarding [a person's] physical appearance could readily be ascertained").

**B. In the Alternative, Good Cause Exists to Set Aside Any Entry of Default Under Rule 55(c)**

Should the Clerk enter default before this opposition is considered, the Court should immediately set it aside for good cause under Rule 55(c). All three *Keegel* factors weigh decisively in Saddam Hifter's favor.

*1. The Default Was Not Willful*

A default is willful only where the defendant's conduct was "deliberate or intentional." *Creecy v. Kellibrew*, 292 F.R.D. 116, 118-19 (D.D.C. 2013). Saddam Hifter did not willfully ignore this lawsuit. He was never served. The process server served a different individual — his brother Belqasem — at a business conference at The Ritz-Carlton, while Saddam was at the State Department for military and diplomatic meetings. A party who has not been served cannot be said to have willfully defaulted.

*2. Setting Aside Default Would Not Prejudice Plaintiffs*

Plaintiffs would suffer no cognizable prejudice. They filed this action on July 18, 2023, but did not add Saddam Hifter as a defendant until April 29, 2025 — nearly twenty-two months later. (ECF Nos. 1, 12.) They cannot claim prejudice from a brief additional period for Saddam Hifter to respond through counsel. The TVPA provides a ten-year statute of limitations; the underlying incident occurred in September 2019. Plaintiffs face no limitations risk.

The broader procedural history underscores the absence of prejudice. Plaintiffs' motion for alternative service was denied without prejudice on November 3, 2025 for insufficient evidence. Two of three defendants remain unserved nearly three years after the Complaint was filed. Plaintiffs themselves filed a request for a 45-to-60-day extension of their service deadline on the same day they filed the Request for Entry of Default. (ECF No. 20.) Delay alone is insufficient to establish prejudice. *See Jackson*, 636 F.2d at 836.

10

*3. Saddam Hifter Has Meritorious Defenses*

A defense is meritorious for purposes of Rule 55(c) if it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374. Saddam Hifter far exceeds that threshold.

*Defective Service of Process (Rule 12(b)(5)).* As set forth above and demonstrated by the photographic comparison, the process server served the wrong person. This defense is virtually certain to succeed.

*Lack of Personal Jurisdiction (Rule 12(b)(2)).* The Second Amended Complaint does not allege that Saddam Hifter — or any Defendant — targeted the United States or conducted any activity involving the United States in connection with the events at issue. The D.C. Circuit's binding decision in *Lewis v. Mutond*, 62 F.4th 587, 593 (D.C. Cir. 2023), forecloses personal jurisdiction: even torture of an American citizen abroad as alleged in that case, "unless directed at the United States, is insufficient to satisfy the usual 'minimum contacts' requirement." In a TVPA case, a plaintiff must show that "a foreign defendant 'engaged in unabashedly malignant actions directed at [and] felt in' the United States." 62 F.4th at 594 (quoting *Mwani v. bin Laden*, 417 F.3d 1, 4 (D.C. Cir. 2005)). The Fourth Circuit's decision in *al-Suyid v. Hifter*, 139 F.4th 368, 377 (4th Cir. 2025), confirms that co-Defendant Khalifa Hifter — a dual U.S.-Libyan citizen who allegedly owned property in Virginia — was not subject to personal jurisdiction because his contacts with the forum were unrelated to the alleged unlawful conduct in Libya. Saddam Hifter's non-U.S. citizenship and non-ownership of any U.S. property, without any alleged U.S.-directed conduct, cannot suffice to give the Court personal jurisdiction over him. Even if Saddam Hifter were not to assert this defense, the Court must independently assess whether there is personal jurisdiction over the claims, as the "entry of a default judgment is not automatic, and [ ] a court should satisfy itself

11

that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6.

*Lack of Standing.* In January 2026, the Eastern District of Virginia granted summary judgment in favor of Khalifa Hifter in on the ground that different plaintiffs lacked standing under the TVPA because they had not been appointed as executors of the decedents' estates. *al-Suyid, et al. v. Hifter, et al.*, No. 20-cv-170, 2026 WL 950623, at *2 (E.D. Va. Jan. 8, 2026) ("The TVPA's legislative history makes clear that '[t]he term ] 'legal representative' is limited to 'the executor or executrix of the decedent's estate.'"). Plaintiff Anbees claims to be a "Personal Representative" but does not allege appointment as executor — the same deficiency that negated standing in *al-Suyid*. (ECF No. 12 ¶ 1.)

## C. The Strong Policy Favoring Resolution on the Merits Requires Denial of Default

The D.C. Circuit has repeatedly emphasized that "[d]efault judgments are not favored by modern courts, and the philosophy of modern federal procedure favors trials on the merits." *Jackson*, 636 F.2d at 835. This policy is at its apex where, as here, a defendant has appeared through counsel for the purpose of asserting these arguments, has articulated substantial defenses, and the alleged default resulted not from willful disregard of the litigation but from the failure of Plaintiffs' own process server to serve the correct individual — a failure now confirmed by the process server's own declaration.

**CONCLUSION**

For the foregoing reasons, Defendant Saddam Hifter respectfully requests that the Court (1) deny Plaintiffs' Request for Clerk's Entry of Default (ECF No. 21); or (2) in the alternative, set aside any entry of default for good cause under Rule 55(c); or (3) in the further alternative, order an evidentiary hearing on the question of whether service was properly effected on Saddam Hifter; and (4) grant such other and further relief as the Court deems just and proper.

Dated: Washington, D.C.
        April 14, 2026

Respectfully submitted,

Timothy Parlatore
Parlatore Law Group, LLP
260 Madison Ave., 17th Floor
New York, New York 10016
timothy.parlatore@parlatorelawgroup.com

Jason A. Masimore *(Pro Hac Vice to be filed)*
Brodbecks Law, PLLC
305 Broadway, 7th Floor
New York, New York 10007
jason.masimore@brodbeckslaw.com

*Counsel for Defendant Saddam Hifter*
*(Special Appearance — Without Submission to*
*Jurisdiction)*

13