**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MOHAMMED ABUOJAYLAH ALI
ANBEES, *et al.*,

                 *Plaintiffs*,

     v.

KHALIFA HIFTER, *et al.*,

                 *Defendants*.

Case No. 1:23-cv-02061-AHA

HON. AMIR H. ALI

**PLAINTIFFS' REPLY IN SUPPORT OF REQUEST FOR CLERK'S
ENTRY OF DEFAULT AGAINST SADDAM HIFTER**

Defendant Saddam Hifter is a war criminal responsible for torturing Plaintiff Mohammed Abuojaylah Ali Anbees, et al., and torturing and killing his family members. ECF No. 12 ¶ 9. Back in April 2025, Plaintiff Anbees served Defendant Saddam Hifter with this lawsuit, and he chose to ignore it. ECF Nos. 15, 21. Apparently, Saddam Hifter has been lying in wait for months, in anticipation of Plaintiff moving for default. Less than 12 hours after Plaintiff so moved on April 13, 2026, *see* ECF No. 21, counsel for Defendant Saddam Hifter emailed the Court and Plaintiffs' counsel, notifying them that they would imminently be moving to set aside the default. They followed through. *See* ECF No. 23.

Saddam Hifter makes a case of mistaken identity, contending that Plaintiff Anbees served Saddam's brother Belqasem instead of him. His argument is not convincing. It is irrelevant that Saddam was at an event at the State Department on April 28, 2025, when he was served at The Ritz Carlton on April 29, 2025. And the fact that Belqasem was also at The Ritz Carlton on April 29 does not mean that Saddam was not there. Saddam Hifter hangs his hat on an affidavit he purportedly obtained six months ago (in October 2025) from the process

server who swore under penalty of perjury that he "served Saddam Hifter," ECF No. 15, that Saddam claims corroborates his mistaken identity theory. *See* ECF No. 23-1. It does not. In addition to the fact that it bears no indicia of reliability, the October 2025 affidavit does not actually refute the contents of the April 2025 affidavit of service.

In short, Saddam Hifter makes a big deal about a series of events that do not disprove proper service in an effort to evade accountability. The Court should not award such gamesmanship. Plaintiff Anbees's request for entry of default under Federal Rule of Civil Procedure 55(a) remains proper and should stand. But if the Court has any doubt, it should conduct an evidentiary hearing before ascertaining the propriety of service on Defendant and deciding whether the default should issue. And if the Court finds that Defendant Saddam Hifter was not properly served, it should permit Plaintiff Anbees to effectuate service on Defendant Saddam Hifter through his counsel.

## RELEVANT FACTS

1.      This action arises from acts of torture and extrajudicial killing committed in Libya against Plaintiff Mohammed Abuojaylah Ali Anbees and members of his family. Plaintiff filed his Second Amended Complaint on April 29, 2025. *See* ECF No. 12. The Second Amended Complaint names Saddam Hifter as a Defendant and sets forth allegations of his command responsibility and participation in the LNA's campaign of extrajudicial killing and torture. *See* ECF No. 12 ¶¶ 3, 9, 14, 46, 51, 87, 97, 103, 107.

2.      Defendant Saddam Hifter is a son of Defendant Khalifa Hifter and a dual citizen of Libya and the United States. *See id.* ¶ 3.

3.      Saddam Hifter holds the rank of Colonel in the Libyan Arab Armed Forces ("LAAF"), also known as the Libyan National Army ("LNA"). He rose to prominence within

the LNA through familial influence, rapid military appointments, and his involvement in key strategic military operations, including serving as a senior commander in the LNA's 2019 offensive on Tripoli. *See id.* ¶¶ 3, 46. His identity and military role as a senior LAAF commander have been documented in official international records. Among other sources, the 2018 United Nations Security Council Panel of Experts Report—a report submitted to the Security Council pursuant to Security Council Resolution 1973 (2011) and publicly available—identifies "Captain Saddam" (subsequently promoted to Colonel) as the battalion commander who led the looting of the Libyan Central Bank, establishing his status as a named officer exercising independent command authority within the LNA. *See* U.N. Security Council, Panel of Experts on Libya, Report of 5 September 2018 (S/2018/812), pp. 10–11.

4.    After naming Saddam Hifter in this case, Plaintiff worked to effectuate service on him.

5.    On April 29, 2025, at 2:23 p.m., a process server named Maxwell Cook "personally served Saddam Hifter." ECF No. 15. Maxwell Cook's description of Saddam Hifter is consistent with Saddam Hifter's known profile. ECF No. 21-1 ¶ 3.

6.    The circumstances of service were unambiguous and conclusive. Process server Maxwell Cook was directed to serve Saddam Hifter at The Ritz-Carlton in connection with a conference taking place at that location on April 29, 2025. Upon arriving, Mr. Cook spoke with a conference attendee and asked if he could point out Saddam Hifter. The attendee identified Saddam Hifter as the man currently on stage signing papers and indicated that Mr. Cook would likely be unable to speak with him. Mr. Cook waited for Saddam Hifter to finish on stage. When Saddam Hifter walked off the stage and began speaking with other attendees, Mr. Cook approached him, stated his name aloud, and Saddam Hifter made direct eye contact

with Mr. Cook and extended his hand to accept the legal documents. Mr. Cook handed him the papers and stated, "You've been served." *See* ECF No. 15; ECF No. 21-1 ¶ 6.

7.      Plaintiff Anbees filed Maxwell Cook's affidavit of service on June 30, 2025. *See* ECF No. 15.

8.      Despite this, up until a couple weeks ago, Saddam Hifter had not engaged with this lawsuit at all. He did not appear. He did not answer. He did not move to dismiss.

9.      But he apparently knew of the lawsuit all along, and he chose to ignore it.

10.     On April 13, 2026, Plaintiff Anbees moved for entry of default as to Defendant Saddam Hifter, based on Maxwell Cook's affidavit of service and Defendant's failure to plead or otherwise defend this action. *See* ECF No. 21; Fed. R. Civ. P. 55(a).

11.     Within 12 hours of this filing, counsel for Defendant Saddam Hifter emailed the Court and undersigned counsel that "we intend to file a submission by ECF today in opposition to plaintiffs' request for clerk's entry of default against defendant Saddam Hifter, filed last night (Dkt. 21)." *See* Ex. 1 (April 14, 2026 Email from Jason Masimore).

**12.**    Later that day, on April 14, 2026, Defendant Saddam Hifter, through his attorneys, filed an opposition to Plaintiffs' request for entry of default. ECF No. 23.

**13.**    The crux of Defendant's argument is that Plaintiff Anbees allegedly served Belqasem Hifter, Saddam Hifter's brother, instead of Saddam. *See id.*

**14.**    Defendant relies on publicly reported information that Saddam Hifter was at an event at the State Department on April 28, 2025, and that Belqasem was at an event at The Ritz Carlton on April 28-29, 2025. There is no contradiction between these facts, though— Saddam's presence at the State Department on April 28 does not preclude his attendance at a separate event at The Ritz Carlton on April 29.

15.     Saddam Hifter attaches to his brief an affidavit purporting to be from Maxwell Cook in which he states that he served the pleadings in this case "on a man I believed at the time to be Saddam Hifter." ECF No. 23-1 ¶ 3. The affidavit also includes a photo "of the man [he] served, which appear to depict him at the Ritz-Carlton event where [Mr. Cook] served him." Mr. Cook "did not take these photos." *Id.* ¶ 4. Defendant then claims that the photo depicts his brother Belqasem Hifter, not him. ECF No. 23 at 5-6.

16.     Notably, this affidavit purporting to be from Maxwell Cook (the same process server that attested to serving Saddam Hifter on April 29, 2025) does not have any of the markings of an official affidavit from a process server. It does not include the name of the process serving company (Same Day Process Service, Inc.,), the address, phone number, or email address. It does not include a case caption. It bears no indicia of authenticity. *Compare* ECF No. 15 *with* ECF No. 23-1.

## DISCUSSION

The Federal Rules of Civil Procedure "provide for default judgments" to "safeguard plaintiffs when the adversary process has been halted because of an essentially unresponsive party" to "protect[]" the "diligent" plaintiff "lest he be faced with interminable delay and continued uncertainty as to his rights." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation omitted). Saddam Hifter is the definition of an unresponsive party. He was served one year ago. Six months ago, he apparently conspired with the process server who previously declared under penalty of perjury that that he served Saddam to manufacture a second affidavit that Saddam claims calls into question the original affidavit of service. (It does not). And within hours of Plaintiff Anbees moving for entry of default, his attorneys pounced. Plaintiff Anbees should not have to deal with "interminable delay" simply because Saddam

Hifter chose to ignore the existence of this lawsuit, rather than defend it on the merits. The Clerk should proceed with entering default.

### A. The Clerk should enter default because Defendant Saddam Hifter's evidence is not credible.

After choosing to ignore this lawsuit for at least six months, Defendant Saddam Hifter asks the Court to find that he has not defaulted based on an unsupported claim that he was not served, as required for entry of default under Rule 55(a). The Court should not do so. Defendant's argument rests on 1) publicly reported information about Saddam Hifter and his brother's whereabouts that has zero bearing on whether Saddam was at The Ritz Carlton on April 29, 2025, and 2) a declaration from the process server that appears designed to be a "gotcha" but by no means undermines the affidavit of service. *See* ECF No. 23. This is no reason to decline to issue a default under Rule 55(a).

Plaintiff Anbees's affidavit of service establishes service on Saddam Hifter: Maxwell Cook asked an individual in the room to point out Saddam; Maxwell Cook approached the person who had been identified as Saddam and called his name; Saddam made eye contact with Maxwell Cook and extended his hand to accept the legal documents. *See* ECF No. 15. Service was effectuated. And there is no dispute that Saddam Hifter "failed to plead or otherwise defend" this lawsuit after he was served. *See* Fed. R. Civ. P. 55(a). Default is warranted. *See* ECF No. 21.

Defendant Saddam Hifter relies on no more than rank speculation to undercut this reality. He states as fact that "the event at The Ritz-Carlton on April 29, 2025 was Belqasem Hifter's forum — not a venue where Saddam Hifter was present, i.e., the State Department the day before. The process server went to the wrong event." ECF No. 23 at 10. But there is zero contradiction (or even relation) between Saddam's documented presence at the State

Department event on April 28 and his presence at the Ritz Carlton event on April 29, where Maxwell Cook served him. *See* ECF No. 15.

Saddam Hifter than faults Maxwell Cook for not "independently identify[ing]" him and instead "rel[ying] entirely on a stranger's direction at a crowded conference." *Id.* at 9. But this is the nature of service of process; the person being served is not typically personally known to the process server, and they rely on extrinsic information to make the identification. Maxwell Cook did not merely ask someone to identify Saddam Hifter; he approached him and called him by his name; only when Saddam Hifter responded did Maxwell Cook effectuate service. *See* ECF No. 15.

Saddam Hifter has also conjured a subsequent affidavit allegedly from Maxwell Cook, dated October 2025, that he claims calls the original affidavit of service into question. *See* ECF No. 23-1. Not so. As an initial matter, the October 2025 affidavit bears no indicia of authenticity. *See supra* ¶ 16. But even if it were authentic, it does not negate the original affidavit. In it, Maxwell Cook (or someone pretending to be him) says that he served an individual he "believed at the time to be Saddam Hifter." ECF No. 23-1 ¶ 3. That does not prove that his previous belief was wrong. The affidavit also includes "photographs of the man [Maxwell Cook] served," ECF No. 23-1 ¶ 4, which Saddam Hifter claims actually depict his brother Belqasem, ECF No. 23 at 11. But this affidavit was executed over five months after Maxwell Cook served Saddam Hifter, and while Saddam and Belqasem do not look the same, they certainly look similar. *See id.* at 7; *see also* ECF No. 21-1 ¶ 3 (explaining that Maxwell Cook's physical description of the person he served on April 29, 2025 "is consistent with Saddam Hifter's known profile"). Given the inherent unreliability of eyewitness

identification,[1] it is incredibly likely that if Saddam Hifter's attorneys presented Maxwell Cook with a picture of Belqasem five months after service, Maxwell Cook would have agreed that this was the individual he served. The October 2025 affidavit is self-serving and too convenient (for Saddam Hifter) to be taken at face value. The Court should reject Saddam Hifter's attempts to rely on this unreliable affidavit to undercut Maxwell Cook's April 2025 affidavit of service.

Stated simply, Defendant Saddam Hifter has not reasonably called into dispute that he was served with this lawsuit on April 29, 2025. The Clerk should enter default for his failure "to plead or otherwise defend" against this lawsuit. Fed. R. Civ. P. 55(a). But if the Court has any doubts, Plaintiff Anbees agrees that an evidentiary hearing (at which Maxwell Cook would be compelled to explain the circumstances underpinning the October 2025 affidavit himself) would be appropriate. *See* ECF No. 23 at 11.

### B. Defendant Saddam Hifter has not demonstrated that the default should be set aside under Rule 55.

Defendant Saddam Hifter requests in the alternative that the Court set aside the default under Rule 55(c). *See* ECF No. 23 at 12. But despite Defendant's persistent hand waving, good cause does not exist.

Three factors inform whether a court should set aside a default based on good cause: "(1) whether the default was willful, (2) whether a set-aside would prejudice plaintiff, and (3) whether the alleged defense was meritorious." *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980). None weigh in favor of Saddam Hifter.

---

[1] "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade*, 388 U.S. 218, 228 (1967).

*First*, on this record, the Court can easily conclude Defendant Saddam Hifter's default *was* willful. He was personally served one year ago. ECF No. 15. In October 2025, he managed to secure an affidavit from the process server who served him. ECF No. 23-1. And he has apparently been lying in wait for this motion, given that his attorneys responded to it virtually immediately. *See supra* ¶¶ 11-12; ECF No. 23.

*Second*, the set-aside would prejudice Plaintiff Anbees. Before seeking default, Plaintiff Anbees waited a full year for Defendant Saddam Hifter to acknowledge this lawsuit; Saddam never did so. Contrary to what Defendant Saddam Hifter argues, ECF No. 23 at 12, the fact that other Defendants have not been served does not militate in his favor. Rather, it underscores the prejudice to Plaintiff. Plaintiff Anbees seek justice for war crimes, and Defendants have thus far largely evaded liability because of the logistical difficulties associated with hauling them into court in the United States. *See* generally ECF Nos. 16, 18, 20. But Plaintiff Anbees *did* manage to serve Defendant Saddam Hifter. He should not be denied the opportunity to hold one culpable party accountable just because he is still working on serving other Defendants or because Defendant Saddam Hifter chose not to submit to this Court's properly exercised jurisdiction.

*Finally*, Saddam Hifter has not established meritorious defenses to this lawsuit. Instead, he conclusorily cites non-binding precedent from cases brought by Libyan nationals seeking to vindicate similar rights under the Torture Victim Protection Act. *See* ECF No. 23 at 13-14. This Court has an independent obligation to assess personal jurisdiction and standing on the facts of *this* case; findings in separate cases involving separate parties and

separate issues[2] do not automatically translate to this case, and they certainly do not bind this Court. Defendant Saddam Hifter gave up his opportunity to raise these defenses by choosing to ignore the summons. Plaintiff Anbees can brief, and the Court can weigh in, on jurisdiction when Plaintiff Anbees moves for default judgment.

### C. Alternatively, the Court should authorize service on Defendant Hifter through his counsel.

If the Court concludes that default is not warranted because Defendant Saddam Hifter was not properly served, then it should authorize Plaintiff Anbees to serve Defendant Saddam Hifter through his retained United States counsel, Timothy Parlatore and Jason Masimore, who have entered a limited appearance on his behalf in this proceeding. Saddam Hifter's active retention of U.S. counsel in this matter—who have apparently been monitoring this proceeding since at least October 2025—demonstrates that Defendant has meaningful, reliable access to the American legal system and that service through that counsel will apprise him of the pendency of this action.

Courts in this District and the D.C. Circuit regularly authorize service through a foreign defendant's retained U.S. counsel as an appropriate method under Rule 4(f)(3). The D.C. Circuit held in *Freedom Watch, Inc. v. Organization of the Petroleum Exporting Countries*, 766 F.3d 74, 83–84 (D.C. Cir. 2014), that this Court abused its discretion when it failed to analyze and declined to authorize service on a foreign defendant through that defendant's retained U.S. counsel. *Accord Hashem v. Shabi*, No. CV 17-1645 (ABJ), 2018 WL 3382913, at *4–5

---

[2] For instance, Defendant Saddam Hifter relies on a decision out of E.D.V.A. for the proposition that Plaintiff Anbees lacks standing because he was not appointed executor of the decedents' estate. ECF No. 23 at 14 (citing *al-Suyid, v. Hifter*, No. 20-cv-170, 2026 WL 950623, at *2 (E.D. Va. Jan. 8, 2026)). But this argument ignores the fact that Plaintiff Abees seeks relief on behalf of himself as a survivor of torture, not just on behalf of his family members who were murdered. *See* ECF No. 12 ¶¶ 55-63.

(D.D.C. Apr. 26, 2018); *Saleh v. Al Nahyan*, No. CV 20-1168 (ABJ), 2021 WL 7210780, at *4–5 (D.D.C. July 16, 2021). Counsel's consent is not a prerequisite; the court's order supplies the authorization. *See Freedom Watch*, 766 F.3d at 83; *Hashem*, 2018 WL 3382913, at *5. And this method satisfies due process it is "reasonably calculated, under all circumstances, to apprise [defendants] of the pendency of the action and afford [them] an opportunity to present [their] objections." *Saleh*, 2021 WL 7210780, at *5 (cleaned up).

The rationale for this rule is straightforward: a defendant who retains U.S. counsel to contest U.S. court proceedings has demonstrated that the counsel-client channel is a reliable and functional means of receiving legal communications. There is no stronger evidence that a communication will reach a foreign individual than that he is paying a U.S. attorney to communicate on his behalf in U.S. courts. For that reason, the Court should authorize service on Defendant Saddam Hifter through Timothy Parlatore and Jason Masimore.

There is no other impediment to this method of service, either, as no international agreement with Libya prohibits this method of service. *See* Fed. R. Civ. P. 4(f)(3) (authorizing only methods "not prohibited by international agreement"). No applicable treaty or international agreement bars service of process on Defendant Saddam Hifter through his U.S. counsel. Libya is not a signatory to the Hague Service Convention, which therefore imposes no constraint on the permissible methods of service as to a defendant in Libya. No other bilateral treaty between the United States and Libya addresses service of civil process in a manner that would prohibit service through counsel. *See generally* <u>*Aboulgaed v. Hifter,*</u> No. CV 20-298 (CKK), 2020 WL 12765270, at *1 (D.D.C. Apr. 28, 2020) (in a previous lawsuit against Defendant Khalifa Hifter, authorizing service under Rule 4(f)(3) without Hague Convention constraint).

## CONCLUSION

For these reasons, the Court should direct the Clerk to proceed with entry of default and give Plaintiff Anbees an opportunity to move for default judgment against Saddam Hifter. If the Court has any doubts about the validity of service on Defendant Saddam Hifter, the Court should conduct an evidentiary hearing. And if the Court ultimately concludes that Defendant Saddam Hifter was not properly served, the Court should permit Plaintiff Anbees to serve Defendant Saddam Hifter through his attorneys who have appeared in this case.

Respectfully submitted,

_____/s/Abdel-Rahman Hamed_____
ABDEL-RAHMAN HAMED, ESQ.
DC Bar No. 1632130
**Hamed Law**
P.O. Box 25085
Washington, D.C. 20027

(202) 888-8846

Advocates@HamedLaw.com

*Attorney for Plaintiffs*