UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED ABUOJAYLAH ALI ANBEES, *et al.*,

Plaintiffs,

v.

KHALIFA HIFTER, *et al.*,

Defendants.

Case No. 1:23-cv-02061-AHA
Judge Amir H. Ali

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT SADDAM HIFTER'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Timothy Parlatore
Parlatore Law Group, LLP
260 Madison Ave., 17th Floor
New York, New York 10016
timothy.parlatore@parlatorelawgroup.com

Jason A. Masimore *(Pro Hac Vice to be filed)*
Brodbecks Law, PLLC
305 Broadway, 7th Floor
New York, New York 10007
jason.masimore@brodbeckslaw.com

*Counsel for Defendant Saddam Hifter*
*(Special Appearance — Without Submission to Jurisdiction)*

**Table of Contents**

**PRELIMINARY STATEMENT** .......... **1**

**ARGUMENT** .......... **2**

**A. The Court Should Dismiss the Complaint Because the Court Lacks Personal Jurisdiction Over Defendant Saddam Haftar Under Rule 4(k)(2).** .......... **2**

1. Plaintiffs' Bare Legal Conclusion that Defendant Saddam Haftar Is a U.S. Citizen Does Not Meet Their Burden to Make a *Prima Facie* Showing. .......... 2

2. Defendant Saddam Haftar Is Not, and Has Never Been, a U.S. Citizen. .......... 3

3. Even if Defendant Saddam Haftar Were a U.S. Citizen, the Court Would Lack Personal Jurisdiction Over Him Under Controlling Legal Precedent. .......... 4

**B. The Court Should Deny Plaintiffs' Request for Jurisdictional Discovery Because They Failed To Demonstrate That It Would Lead to the Discovery of New Information Relevant to Personal Jurisdiction.** .......... **6**

**C. In the Alternative, If the Court Addresses the Merits, It Should Dismiss the Second Amended Complaint for Failure to State a Claim Under Rule 12(b)(6).** .......... **7**

1. The Second Amended Complaint Alleges Coordination, Not the Effective Control Required for Command Responsibility. .......... 7

2. The Second Amended Complaint Does Not Allege a "Deliberated" Killing. .......... 8

3. The Alleged Conduct Does Not Rise to the TVPA's Definition of Torture. .......... 9

4. Plaintiff Anbees Failed to Adequately Plead Representative Capacity. .......... 12

**CONCLUSION** .......... **12**

## Table of Authorities

**Cases** **Page(s)**

*Akhmetshin v. Browder*, 181 F.4th 1307 (D.C. Cir. 2026) .......... 5

*Al-Suyid v. Hifter*, 139 F.4th 368 (4th Cir. 2025) .......... 12

*Al-Suyid v. Hifter*, No. 1:20-CV-170 (LMB/JFA), 2026 WL 963356 (E.D. Va. Apr. 9, 2026) .......... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2

*Baptist Mem'l Hosp. v. Johnson*, 603 F. Supp. 2d 40 (D.D.C. 2009) .......... 7

*Blackmer v. United States*, 284 U.S. 421 (1932) .......... 5, 6

*Corrinet v. Burke*, 946 F. Supp. 2d 155 (D.D.C. 2013) .......... 3

*Daliberti v. Republic of Iraq*, 146 F. Supp. 2d 19 (D.D.C. 2001) .......... 11

*Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002) .......... 8

*Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025) .......... 4, 5

*Gligorov v. Nation of Brunei*, 185 F.4th 1169 (D.C. Cir. 2026) .......... 1, 4, 5, 7

*Goodwin v. Syrian Arab Republic*, No. 1:23-CV-00267 (CKK/GMH), 2024 WL 5484081 (D.D.C. Dec. 4, 2024), *report and recommendation adopted in part, rejected in part*, 2025 WL 1040847 (D.D.C. Apr. 8, 2025) .......... 10, 11

*Harbury v. Hayden*, 444 F. Supp. 2d 19 (D.D.C. 2006), *aff'd*, 522 F.3d 413 (D.C. Cir. 2008) .......... 6

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) .......... 5

*Lalabekyan v. Vaziri*, No. CV 23-01994 (AHA), 2025 WL 560956 (D.D.C. Feb. 20, 2025) .......... 7

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240 (D.D.C. 2011) .......... 3

*Lewis v. Mutond*, 568 F. Supp. 3d 47 (D.D.C. 2021) .......... 2

*Mamani v. Sanchez Bustamante*, 968 F.3d 1216 (11th Cir. 2020) .......... 8

*Marquez-Marquez v. Gonzales*, 455 F.3d 548 (5th Cir. 2006) .......... 2

*Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322 (N.D. Ga. 2002) .......... 11

*Moldauer v. Constellation Brands Inc.*, 87 F. Supp. 3d 148 (D.D.C. 2015), *aff'd*, No. 15-5103, 2019 WL 3955850 (D.C. Cir. Aug. 7, 2019) .......... 2

*Moore v. Motz*, 437 F. Supp. 2d 88 (D.D.C. 2006) .......... 3

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) .... 2, 7

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) .... 3

*Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017), *certified question answered*, 194 A.3d 38 (D.C. 2018), *vacated and remanded sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020) .... 9

*Peters v. Est. of Qadhafi*, No. CV 21-0516 (CKK), 2025 WL 833206 (D.D.C. Mar. 17, 2025) .... 5

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002) .... 9, 11, 12

*Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) .... 2

*Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230 (D.C. Cir. 2003)... 9, 10, 11

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) .... 11

**Statutes** **Page(s)**

28 U.S.C. § 1406(a) .... 6

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 2(a), 106 Stat. 73 (codified at 28 U.S.C. § 1350 note) .... 6

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73 (codified at 28 U.S.C. § 1350 note) .... 8

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(b)(2), 106 Stat. 73 (codified at 28 U.S.C. § 1350 note) .... 9

**Rules** **Page(s)**

Fed. R. Civ. P. 4(k)(1)(C) .... 5

Fed. R. Civ. P. 4(k)(2).... 2, 4, 5

Fed. R. Civ. P. 12(b)(2).... 2, 12

Fed. R. Civ. P. 12(b)(6).... *passim*

**Other Authorities** **Page(s)**

Deposition of Khalifa Haftar, *Hamza v. Hifter*, No. 20-cv-1038 (E.D. Va. Nov. 6, 2022) (filed as ECF No. 318, *Elzagally v. Haftar*, No. 19-cv-853 (E.D. Va. Nov. 14, 2025)) .... 4

**PRELIMINARY STATEMENT**

Plaintiffs' opposition (ECF No. 30 (the "Opposition")) confirms why the Second Amended Complaint (the "Complaint") must be dismissed. Plaintiffs rest personal jurisdiction entirely on their allegation that Defendant Saddam Haftar is a United States citizen, which they argue is the "principal distinction" from *Gligorov v. Nation of Brunei*, and the "decisive" basis for jurisdiction. (Opp. 2, 8.) Plaintiffs' bare legal conclusion on citizenship falls well short of their *prima facie* burden. But it is also incorrect, now contradicted by Saddam Haftar's uncontroverted sworn declaration. And it would have been legally insufficient even if correct. Accordingly, dismissal for lack of personal jurisdiction is required. The Court should reject Plaintiffs' alternative request for jurisdictional discovery because they failed to demonstrate that such discovery would yield information sufficient to establish personal jurisdiction. Lack of personal jurisdiction can be resolved on the papers.

Nonetheless, if the Court were to examine the merits, Plaintiffs' Opposition recharacterizes, but does not correct, the Complaint's defects. It reframes a pleading alleging coordination without effective control as though it alleged command responsibility. It ignores the allegations negating deliberation in the act of killing and establishing factual circumstances short of the high threshold the TVPA reserves for "torture." And Plaintiff Anbees fails to plead facts sufficient to establish legal capacity to sue on behalf of the Deceased's estates under the laws of any jurisdiction. Accordingly, the Court should dismiss the Complaint under Rule 12(b)(6) if it were to reach the merits.

## ARGUMENT

**A. The Court Should Dismiss the Complaint Because the Court Lacks Personal Jurisdiction Over Defendant Saddam Haftar Under Rule 4(k)(2).**

1. Plaintiffs' Bare Legal Conclusion that Defendant Saddam Haftar Is a U.S. Citizen Does Not Meet Their Burden to Make a *Prima Facie* Showing.

Plaintiffs bear the burden of proving personal jurisdiction to avoid dismissal under Rule 12(b)(2). *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Though "the court must 'assume [the] veracity' of any 'well-pleaded factual allegations' in the complaint, conclusory allegations 'are not entitled to the assumption of truth.'" *Moldauer v. Constellation Brands Inc.*, 87 F. Supp. 3d 148, 153 (D.D.C. 2015), *aff'd,* No. 15-5103, 2019 WL 3955850 (D.C. Cir. Aug. 7, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)); *see also Lewis v. Mutond*, 568 F. Supp. 3d 47, 51 (D.D.C. 2021) (same). Contrary to Plaintiffs' argument that "Defendant's unsupported contrary statement [denying U.S. citizenship] in a footnote cannot defeat" personal jurisdiction, (Opp. 2), it is the Plaintiffs' burden to make a *prima facie* showing, not the Defendant's. *Mwani*, 417 F.3d at 7; see also *Lewis*, 568 F. Supp. 3d at 51.

Plaintiffs concede that their sole basis for asserting personal jurisdiction over Defendant Saddam Haftar under Rule 4(k)(2) is his alleged U.S. citizenship. (Opp. 8.) This is a legally insufficient basis for personal jurisdiction under the TVPA for the reasons explained below in Section A.3. Nonetheless, Plaintiffs fail to meet their burden even under their own flawed analysis. The Second Amended Complaint contains a single conclusory allegation that Defendant Saddam Haftar is a U.S. citizen. (Compl. ¶ 14.) Citizenship is a legal conclusion. *Accord Marquez-Marquez v. Gonzales*, 455 F.3d 548, 554 (5th Cir. 2006) (A "nationality claim is a question of law that we review *de novo*"). And "a legal conclusion . . . 'does not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction.'" *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *Naartex Consulting Corp. v.*

*Watt*, 722 F.2d 779, 787–88 (D.C. Cir. 1983)); *see also Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 263–64 (D.D.C. 2011) ("In order to meet this burden the '[p]laintiff must allege specific facts on which personal jurisdiction can be based; [the plaintiff] cannot rely on conclusory allegations.'" (quoting *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006))). Because Plaintiffs failed to make a *prima facie* showing of citizenship, which they argue equates to personal jurisdiction, the Court must dismiss the Complaint.

2. Defendant Saddam Haftar Is Not, and Has Never Been, a U.S. Citizen.

Even assuming that U.S. citizenship, alone, would be sufficient to confer personal jurisdiction as to a TVPA claim (it is not) and that Plaintiffs' bare allegation of U.S. citizenship is sufficient *prima facie* evidence of citizenship (it is not), the uncontested facts in the Declaration of Defendant Saddam Haftar (the "Haftar Decl.," attached as Exhibit 1) defeat Plaintiffs' arguments. *See Corrinet v. Burke*, 946 F. Supp. 2d 155, 159–60 (D.D.C. 2013) (granting motion to dismiss for lack of personal jurisdiction where "Defendants have submitted uncontroverted declarations that directly contradict plaintiff's assertion," because "[c]onclusory allegations are insufficient to establish personal jurisdiction in the face of uncontroverted evidence to the contrary.").

Saddam Haftar is not and has never been a citizen of the United States. He was born in 1987 in Tobruk, Libya, not in the United States. (Haftar Decl. ¶ 2.) He is a Libyan citizen with civilian and diplomatic Libyan passports. (*Id.* ¶ 3, Exhs. A&B.) He is not now, nor has he ever been, a United States citizen. (*Id.* ¶ 4.) He is not naturalized and has never applied for citizenship or naturalization in the United States. (*Id.* ¶ 5.) Nor has he acquired United States citizenship

through his parents (Id. ¶ 12); his father, Defendant Khalifa Haftar, first moved to the United States and only became a U.S. citizen several years *after* Saddam Haftar's birth.[1]

Saddam Haftar has never applied for, been issued, or possessed a Consular Report of Birth Abroad, a Certificate of Citizenship, a Certificate of Naturalization, or any other document issued by the United States reflecting or conferring citizenship on him. (*Id.* ¶ 7.) He has never claimed to be a citizen or national of the United States, nor has he ever held lawful permanent resident status. (*Id.* ¶¶ 8–9.) He never registered to vote, voted, or sought to vote in any U.S. election. (*Id.* ¶ 10.) He has never had a U.S. Social Security number. (*Id.*) He has never resided or been domiciled in the United States; at all relevant times through to the present, Defendant Saddam Haftar's domicile and residence have been in Libya. (*Id.* ¶ 11.)

Against this specific, uncontroverted sworn testimony that Defendant Haftar is not a U.S. citizen, Plaintiffs' bare legal conclusion creates no genuine dispute. The sole premise of Plaintiffs' personal jurisdiction argument—that Defendant Saddam Haftar's U.S. citizenship distinguishes this case from *Gligorov*—is incorrect, and the Court must dismiss the case against him.

3. Even if Defendant Saddam Haftar Were a U.S. Citizen, the Court Would Lack Personal Jurisdiction Over Him Under Controlling Legal Precedent.

Even if Defendant Saddam Haftar were a U.S. citizen, that alone would not confer jurisdiction under Rule 4(k)(2). In the Defendant's Memorandum in Support of His Motion to Dismiss (ECF No. 27, at 7–11), we explained why D.C. Circuit personal jurisdiction precedent predating the Supreme Court's decision in *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 145 S. Ct. 2090, 222 L. Ed. 2d 296 (2025), remains good law as applied to TVPA claims. The D.C. Circuit

[1] *See* Deposition of Khalifa Haftar, *Hamza et al. v. Hifter*, 20-cv-1038 (E.D. Va. Nov. 6, 2022), at 29:21 to 30:8, *available as* ECF No. 318, *Elzagally, et al. v. Khalifa Haftar*, 19 Civ. 853-LMB-JFA (E.D. Va., filed Nov. 14, 2025) (Q: "[W]hen did you move to the United States? What year?" A: "1990." Q: "And you were granted U.S. citizenship, correct?" A: "Yes.").

interprets *Fuld* narrowly to apply only to statutes that contain express jurisdictional triggers, unlike the TVPA. *See Gligorov v. Nation of Brunei*, 185 F.4th 1169, 1180 (D.C. Cir. 2026) ("we recently cautioned that '[a]ny seemingly broad statements in [*Fuld*] must be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.'" (quoting *Akhmetshin v. Browder*, 181 F.4th 1307, 1312 (D.C. Cir. 2026) (internal quotation omitted))). The Supreme Court, itself, narrowly limited *Fuld*'s reach in this manner. 606 U.S. at 11 ("Any difference between the Fifth and Fourteenth Amendments is therefore implicated *in only a subset of cases*, such as those in which personal jurisdiction is . . . . 'authorized by a federal statute'" (quoting Fed. R. Civ. P. 4(k)(1)(C), emphasis added)). The TVPA confers no personal jurisdiction. S*ee Kadic v. Karadzic*, 70 F.3d 232, 246 (2d Cir. 1995) (recognizing that the TVPA "is not itself a jurisdictional statute"). Accordingly, under still-applicable legal precedent, to properly plead personal jurisdiction under Rule 4(k)(2), a TVPA claim must allege sufficient facts to establish "that the defendant[] purposefully targeted the United States." *Peters v. Est. of Qadhafi*, No. CV 21-0516 (CKK), 2025 WL 833206, at *9 (D.D.C. Mar. 17, 2025). The Complaint makes no such allegations.

In support of their argument that U.S. citizenship alone confers personal jurisdiction, Plaintiffs rely solely on *Blackmer v. United States*, 284 U.S. 421, 52 S. Ct. 252, 76 L. Ed. 375 (1932). (Opp. 2, 8.) That reliance is misplaced. *Blackmer* did not hold generally that citizenship by itself supplies personal jurisdiction; it held that a specific federal statute could reach a U.S. citizen abroad because its express terms required a witness who "is a citizen of the United States or domiciled therein" to obey a subpoena and appear to testify in a criminal trial in the United States. *Blackmer*, 284 U.S. at 433–36. The Court grounded that authority in the obligations of citizenship and allegiance: "By virtue of the obligations of citizenship, the United States retained

its authority over him, and he was bound by its laws." *Id.* at 436. Critically, the Court expressly reserved the very situation presented here, cautioning that its holding "does not present the questions which arise in cases where obligations inherent in allegiance are not involved." *Id.* at 439.

Unlike the subpoena statute in *Blackmer*, 284 U.S. 421, the TVPA requires the *opposite* of allegiance to the United States; liability attaches only to a person who acted "under an actual or apparent authority, or color of law, of any foreign nation." TVPA § 2(a). Indeed, the TVPA's "legislative history refers to torture or extrajudicial killing committed by foreign actors rather than domestic ones," and, when signing it, President George H. W. Bush "emphasized that '[t]his legislation concerns acts of torture and extrajudicial killing committed overseas by *foreign* individuals.'" *Harbury v. Hayden*, 444 F. Supp. 2d 19, 41–42 (D.D.C. 2006), *aff'd,* 522 F.3d 413 (D.C. Cir. 2008) (citations omitted, emphasis added by district court). Accordingly, *Blackmer* is inapposite to Plaintiffs' TVPA claims, which fail for lack of personal jurisdiction, even if Defendant Saddam Haftar were a United States citizen.[2]

**B. The Court Should Deny Plaintiffs' Request for Jurisdictional Discovery Because They Failed To Demonstrate That It Would Lead to the Discovery of New Information Relevant to Personal Jurisdiction.**

The Court should deny Plaintiffs' request for jurisdictional discovery into the Defendant's "citizenship, residence, travel, property, [and] financial contacts," (Opp. 8) for two reasons. *First*, as explained above in Section A.3, even if discovery showed the Defendant Saddam Haftar was a U.S. citizen, the Complaint's failure to allege any United States-directed activity as part of its TVPA claim precludes personal jurisdiction. *Second*, Plaintiffs have failed to meet their burden to

[2] Plaintiffs' request for a district transfer under 28 U.S.C. § 1406(a) is misplaced because no U.S. court has personal jurisdiction over Defendant Saddam Haftar for the claims as pleaded in the Complaint. (Opp. 9.)

show "what facts additional discovery could produce that would affect [the court's] jurisdictional analysis." *Gligorov*, 185 F.4th at 1184 (quoting *Mwani*, 417 F.3d at 17) (affirming denial of jurisdictional discovery where plaintiff "offer[ed] only conclusory references to jurisdictional discovery" amounting to "nothing more than 'conjecture or speculation' as to whether jurisdictionally relevant information would be uncovered." (citations omitted)). Defendant Saddam Haftar's uncontroverted declaration establishes that he was not born in the United States and that he has not been naturalized here. (*See* Exh. 1.) Plaintiffs offer no examples of discoverable facts that otherwise would make him a U.S. citizen, nor could they. Since Plaintiffs offer no legitimate basis to pursue discovery on Defendant Saddam Haftar's citizenship, the Court should deny the request, just as this Court did in *Lalabekyan v. Vaziri*, No. CV 23-01994 (AHA), 2025 WL 560956, at *4 n.2 (D.D.C. Feb. 20, 2025) (Ali, J.) (denying discovery and evidentiary hearing where plaintiff failed to make a "'showing of how jurisdictional discovery would help [her] discover anything new.'" (quoting *Baptist Mem'l Hosp. v. Johnson*, 603 F. Supp. 2d 40, 44 (D.D.C. 2009))).

## C. In the Alternative, If the Court Addresses the Merits, It Should Dismiss the Second Amended Complaint for Failure to State a Claim Under Rule 12(b)(6).

The Complaint should be dismissed for lack of personal jurisdiction. Should, however, the Court reach the merits of the Plaintiffs' claims, it should dismiss them for failure to state a claim under Rule 12(b)(6).

### 1. The Second Amended Complaint Alleges Coordination, Not the Effective Control Required for Command Responsibility.

Plaintiffs' Opposition attempts to recast Defendant's motion as attacking "aiding-and-abetting conspiracy labels." (Opp. 9.) But Defendant's motion is not aimed at mere labels. Even accepting the Complaint's well-pleaded allegations as true, it alleges merely that the LNA coordinated with and contracted for the Wagner Group's support, not that Defendant Saddam

Haftar exercised the "effective control" required by the command responsibility doctrine. Coordination with the party who controls the perpetrators is not itself effective control, and Plaintiffs failed to plead Defendant Saddam Haftar's own material ability to prevent or punish. *See Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1290–91 (11th Cir. 2002). Plaintiffs rely on the Complaint's allegation that Wagner operated "under the authority of" Saddam Haftar while simultaneously alleging that Prigozhin commanded Wagner's forces. (Opp. 9–11; Compl. ¶¶ 6, 9, 46, 84–87.) But Plaintiffs cannot plead that a separate principal commanded the perpetrators—"Prigozhin refused to let his fighters serve under someone else's command" (Compl. ¶ 79)—and ask the Court to infer the opposite, that Defendant Saddam Haftar had the material ability to prevent or punish their acts. The Complaint negates an essential element of command responsibility, and should be dismissed under Rule 12(b)(6).

2. <u>The Second Amended Complaint Does Not Allege a "Deliberated" Killing.</u>

Plaintiffs concede that "deliberated" means a considered, purposeful act, but their arguments ask the Court to ignore the Complaint's own characterization of the shooting. (Opp. 12.) The TVPA requires "at a minimum, that there be a considered, purposeful act that takes another's life," and the deliberation attaches to the killing itself. *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1222, 1232–35 (11th Cir. 2020) ("Plaintiffs must present some evidence that their relatives' deaths were the result of a purposeful act to take another's life and that the deaths were not caused by 'accidental or negligent' behavior. . ."). A deliberate decision to do something else, such as to detain, interrogate, or even frighten, is not a deliberated killing within the meaning of Section 3(a) of the TVPA. Whatever deliberation the Complaint attributes to the abduction, transport, overnight confinement, and placement of the victims, it negates deliberation as to the killing by alleging that the shooters appeared intoxicated and fired haphazardly. (Compl. ¶¶ 62–

63.) Plaintiffs' own authority confirms the point. In *Owens v. Republic of Sudan*, deliberation was found where the killing was the product of "substantial preparation, meticulous timing, and coordination across multiple countries in the region" directed at the act of killing. *Owens v. Republic of Sudan*, 864 F.3d 751, 770 (D.C. Cir. 2017), *certified question answered,* 194 A.3d 38 (D.C. 2018), and *vacated and remanded sub nom. Opati v. Republic of Sudan*, 590 U.S. 418, 140 S. Ct. 1601, 206 L. Ed. 2d 904 (2020) (addressing only punitive damages and retroactivity, leaving the court's deliberation analysis undisturbed). By contrast, the Complaint pleads no comparable considered decision aimed at ending the victims' lives. Accordingly, the Complaint fails to state a claim for a deliberated killing under the TVPA and should be dismissed under Rule 12(b)(6).

3. <u>The Alleged Conduct Does Not Rise to the TVPA's Definition of Torture.</u>

Plaintiffs' Opposition fails to confront the high threshold for "torture" under controlling legal precedent, which the Complaint fails to meet. (Opp. 13–14.) Plaintiffs invoke the TVPA's mental-torture definition, "prolonged mental harm caused by . . . the threat of imminent death" and "the threat that another individual will imminently be subjected to death." TVPA § 3(b)(2)(C)–(D); (Opp. 13.) But the D.C. Circuit has held that the entire definition carries a "severity requirement" ensuring the conduct is "sufficiently extreme and outrageous to warrant the universal condemnation that the term 'torture' both connotes and invokes," a label "usually reserved for extreme, deliberate and unusually cruel practices, for example, sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 92–93 (D.C. Cir. 2002). So too, *Simpson* forecloses Plaintiffs' theory. There the plaintiff was "'interrogated and then held incommunicado,' 'threatened with death . . . if [she] moved from the quarters [where she was] held,' and 'forcibly separated from her husband,'" but the D.C. Circuit

held these acts, though reflecting "a bent toward cruelty on the part of their perpetrators," were "not in themselves so unusually cruel or sufficiently extreme and outrageous as to constitute torture within the meaning of the Act." *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 234, 235 (D.C. Cir. 2003) (the "Act" referring to the FSIA, which adopts the TVPA's torture definition).

An express death threat, coupled with detention and separation from family, is insufficient as a matter of law. The Complaint's alleged seizure at home, restraint, confinement in a truck, a pistol to the head during a bathroom-break interrogation, overnight detention, and the killing of relatives the next morning (Compl. ¶¶ 55–70; Opp. 13), is of the same character as that held insufficient in *Simpson*, 326 F.3d 230. They are materially indistinguishable from the interrogation, threats to hand plaintiff over to ISIS, detention in a cell showing signs of past torture, and twisted threats of torture that the magistrate judge in *Goodwin v. Syrian Arab Republic* held "equivalent to the conduct in *Simpson*, 326 F.3d 230 that the D.C. Circuit found insufficient to constitute torture." *Goodwin v. Syrian Arab Republic*, No. 1:23-CV-00267 (CKK/GMH), 2024 WL 5484081 (D.D.C. Dec. 4, 2024), *report and recommendation adopted in part, rejected in part,* No. CV 23-267 (CKK/GMH), 2025 WL 1040847 (D.D.C. Apr. 8, 2025). The district court agreed that this conduct did not establish torture on the record originally before the magistrate judge, and reached the opposite result only after the plaintiff supplemented the record with evidence of a far more severe character, including repeated sexual assault and prolonged, painful stress positions during interrogation. *Goodwin*, 2025 WL 1040847, at *7–8 (concluding that "[i]n light of this new evidence" that the plaintiff "was tortured"). The Complaint here alleges nothing of that character. Its allegations of detention, a threat, and a shooting fall short of the severity requirement which "is

crucial," ensuring "that foreign states are not stripped of their sovereign immunity unless they have been charged with actual torture." *Id.* at *7 (quoting *Price*, 294 F.3d at 92–93).[3]

The Complaint alleges a single day and night of detention, a threat, and a shooting, which does not rise to even the level *Simpson* held insufficient to constitute torture. The Opposition's attempt to distinguish *Al-Suyid v. Hifter* highlights the point. (Opp. 14.) That the court resolved the torture question on summary judgment makes *Al-Suyid* stronger for Defendant Saddam Haftar because even after discovery, the plaintiffs there could not establish torture, and the court, applying *Price* and *Simpson*, held that detention and gunfire, without evidence of severe and deliberate cruelty, do not meet the TVPA's standard. *Al-Suyid v. Hifter*, No. 1:20-CV-170 (LMB/JFA), 2026 WL 963356, at *5–6 (E.D. Va. Apr. 9, 2026). If that conduct could not satisfy the standard on a summary judgment record, Plaintiffs' allegations here cannot satisfy it on a motion to dismiss, where the Complaint must plead facts that, taken as true, plausibly establish torture. *Price* itself required plaintiffs to "demonstrate in their pleadings that [the] conduct rose to such a level of depravity and caused them such intense pain and suffering as to be properly classified as torture."

---

[3] Plaintiffs' authorities each involved far greater severity or duration than the single night of detention alleged here. (Opp. 13.) In *Daliberti v. Republic of Iraq*, 146 F. Supp. 2d 19 (D.D.C. 2001), detainees were held for as long as 126 and 205 days, and one detainee was confined in a cell with "no lights, window, water, or toilet" and threatened with having his fingers cut off, his fingernails pulled out, and his testicles electrically shocked. *Daliberti*, 146 F. Supp. 2d at 22, 25 (*distinguished by Goodwin*, 2025 WL 1040847, at *5–7) *Mehinovic* involved more than two years of detention and systematic physical torture, including repeated beatings with baseball bats, metal pipes, and chair legs; being hung against windows; beatings to the soles of the feet; and Russian roulette in which the defendant shot at the plaintiff, not a one-night event. *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1345–46 (N.D. Ga. 2002). And in *Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995), one plaintiff was interrogated and tortured for fourteen hours, including being placed inside thick plastic bags with a knife to his head, while another witnessed soldiers force prisoners to walk on broken glass, apply heated iron to their feet, drive needles under their nails, sever flesh and body parts, and throw them into a pit of burning material, conduct a non-D.C. court found to constitute torture without applying the severity requirement later articulated in *Price*, 294 F.3d 82 and *Simpson*. *Xuncax*, 886 F. Supp. at 170–71.

*Price*, 294 F.3d at 93–94. Because the Complaint fails to plead sufficient duration or degree of "prolonged mental harm," it should be dismissed under Rule 12(b)(6).

4. Plaintiff Anbees Failed to Adequately Plead Representative Capacity.

The Complaint contains a bare assertion that Plaintiff Anbees sues "as personal representative" of the Deceased's estates. (Compl. ¶ 1.) Plaintiffs insist that the assertion is sufficient. (Opp. 14–15.) But Plaintiffs fail to engage with or rebut the relevant caselaw and statutes cited by Defendant, instead requesting permission to attempt to make a showing of legal standing under Libyan law. Such an attempt would be futile, because the Court should dismiss the Complaint for any or all of the reasons argued above. Nonetheless, in the alternative, if the Court grants Plaintiffs leave to attempt to establish standing to sue on behalf of the estates for a deliberated killing under the TVPA under D.C., Libyan, or other law, the Defendant requests the right to respond to such submission. Critically, Plaintiffs did not challenge Defendant's argument that Plaintiff Anbees may not sue in a representative capacity to recover separate damages for torture (rather than killing), so dismissal of that portion of the Complaint is conceded.

## CONCLUSION

For the foregoing reasons and the reasons set out in Defendant Saddam Haftar's original motion (ECF No. 27-1), Defendant Saddam Haftar respectfully requests that the Court (1) dismiss the Second Amended Complaint as against him under Rule 12(b)(2) for lack of personal jurisdiction, without prejudice, *see Al-Suyid v. Hifter*, 139 F.4th 368 (4th Cir. 2025); (2) in the alternative, dismiss the Second Amended Complaint with prejudice as against him under Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and (3) grant such other and further relief as the Court deems just and proper.

Dated: Washington, D.C.
November 10, 2026

Respectfully submitted,

Timothy Parlatore
Parlatore Law Group, LLP
260 Madison Ave., 17th Floor
New York, New York 10016
timothy.parlatore@parlatorelawgroup.com

Jason A. Masimore *(Pro Hac Vice to be filed)*
Brodbecks Law, PLLC
305 Broadway, 7th Floor
New York, New York 10007
jason.masimore@brodbeckslaw.com

*Counsel for Defendant Saddam Hifter*